IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-CV-1652-MSK

VIRGINIA BERGER,
DIANE BORRAEGO,
MIKE CORNELL,
TOM GUDAHL,
SCOTT IRWIN,
DAVID JOHNSON,
KENNETH JOHNSON,
DEBORAH KASZYCKI,
RYAN KASZYCKI,
RON MESERY,
DAWN STROWP, individuals,

        Plaintiffs,

    v.

JOHN H. SIMMONS,
a/k/a JOHNNY SIMMONS, an individual,

        Defendant.

---

## SECOND AMENDED COMPLAINT

---

    Plaintiffs, VIRGINIA BERGER, DIANE BORRAEGO, MIKE CORNELL, TOM

GUDAHL, SCOTT IRWIN, DAVID JOHNSON, KENNETH JOHNSON, DEBORAH

KASZYCKI, RYAN KASZYCKI, RON MESERY, and DAWN STROWP, for a Second

Amended Complaint against Defendant Simmons, state and allege:

### SUBJECT MATTER JURISDICTION

    1.    This is an action for breach of fiduciary duty; fraud; negligent misrepresentation;

non-disclosure; concealment; false representation; promissory estoppel; breach of implied

covenant of good faith and fair dealing; civil theft under Colo. Rev. Stat. § 18-4-405;

constructive trust; accounting; tortuous interference with prospective business relationships; breach of contract and declaratory relief.

2.    This Court has subject matter jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1332.

## VENUE

3.    As described herein, A substantial part of the events or omissions giving rise to the claims described below took place in this judicial district.

4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## PARTIES AND PERSONAL JURISDICTION

5.    Plaintiff Virginia Berger is a citizen of the State of Wyoming and resides at 417 E. 23rd, Cheyenne, WY 82001.

6.    Plaintiff Diane Borraego is a citizen of the State of Colorado and resides at 2586 Lawrence Street, Denver, CO 80205.

7.    Plaintiff Mike Cornell is a citizen of the State of Nebraska and resides at 811 University Avenue, Hastings, NE 68901.

8.    Plaintiff Tom Gudahl is a citizen of the State of Wyoming and resides at 4518 Ontario Avenue, Cheyenne, WY 82001.

9.    Plaintiff Scott Irwin is a citizen of the State of Wyoming and resides at 3761 Cribbon, Cheyenne, WY 82001.

10.    Plaintiff David O. Johnson is a citizen of the State of Nebraska and resides at 906 E. 7th Street, Hastings, NE 66901.

11.     Plaintiff Kenneth L. Johnson is a citizen of the State of Nebraska and resides at 4335 S. Street, Lincoln, NE 68506.  Plaintiff Johnson has been secretary and treasurer and a director of St. Joseph, Inc. since of April 2000.  Plaintiff Johnson has also been secretary and treasurer and a director of Staf*Tek Services, Inc.

12.     Plaintiff Deborah Kaszycki is a citizen of the State of Colorado and resides at11493 E. Yale Place, Aurora, CO  80014.

13.     Plaintiff Ryan Kaszycki is a citizen of the State of Colorado and resides at 6950 E. 1st Place, Denver, CO  80220.

14.     Plaintiff Ron Mesery is a citizen of the State of Wyoming and resides at 3326 Alexander, Cheyenne, WY  82001.

15.     Plaintiff Dawn Strowp is a citizen of the State of Wyoming and resides at 4518 Ontario Avenue, Cheyenne, WY  82001.

16.     Defendant John H. Simmons  a/k/a Johnny Simmons, is a citizen of the State of Texas and resides at 12 Lee Court, Trophy Club, TX  76262.

17.     St. Joseph, Inc. is a Colorado corporation with a business address of 4870 S. Lewis, Suite 250, Tulsa, Oklahoma 74105.  Together with its wholly-owned subsidiaries, Staf*Tek Services, Inc. and Staf*Med Global, Inc., St. Joseph will be designated herein as the "Company."  Simmons formerly acted as the President, Chief Executive Officer and a Director of the Company, including its wholly-owned subsidiaries.

18.     St. Joseph conducts all of its business through such wholly-owed subsidiaries, Staf*Tek Services, Inc. and Staf*Med Global, Inc.

3

19.     While acting as President, Chief Executive Officer and a Director of the Company, Simmons engaged Colorado counsel, Raul N. Rodriguez, Esq. of Rodriguez & Associates, to represent the Company and, Plaintiffs are informed and believe, Simmons individually.  Simmons made frequent calls to Mr. Rodriguez at his office in Colorado and corresponded regularly with him.  *See* correspondence from Mr. Rodriguez to Simmons dated August 2, 2004, a copy of which is attached as Exhibit A and incorporated by this reference.

20.     While acting as President, Chief Executive Officer and a Director of the Company, Simmons engaged the Englewood, Colorado firm of Cordovano and Honeck, LLP to prepare audits of the Company and, on information and belief, services to Simmons himself.

21.     Simmons has been personally involved in the pursuit and management of revenue flow, including revenue from the state of Colorado.  For the years 2004, 2005 and 2006 (through 9/22/06), the percentage of Staf*Tech revenue derived from Colorado customers was as follows:

    2004    1.68%;

    2005    27.48%;

    2006    27.29%

22.     Defendant Simmons has directed the preparation and distribution to shareholders, including shareholders in Colorado, of financial information concerning the Company which was false and known to Simmons to be false.  The tortious act of communicating false information to shareholders is completed when such information is distributed and received by the shareholder. Simmons has had continuous and systematic contacts with Colorado.  Simmons has purposefully directed activities described in the Second Amended Complaint at residents of Colorado and the litigation results, in part, from alleged injuries that arise out of or relate to those activities.

## GENERAL ALLEGATIONS

1.      Staf*Tek was organized as an Oklahoma corporation on January 2, 1997. The purchase of Staf*Tek by the Company took place on December 2, 2003 and the acquisition closed on January 2, 2004, at which time Staf*Tek became a wholly-owned subsidiary of St. Joseph.

2.      As a result of the acquisition, Staf*Tek currently operates as the Company's wholly-owned subsidiary, specializing in the recruiting and placement of professional technical personnel on a temporary and permanent basis. Staf*Tek is primarily a regional professional service firm that provides experienced and highly qualified information technology personnel who can demonstrate diversity and flexibility in the work force. Staf*Tek provides Information Technology employees in areas ranging from multiple platform systems integration to end-user support, including specialists in programming, networking, systems integration, database design and help desk support.

3.      While a fiduciary, Simmons established a second wholly-owned subsidiary, Staf*Med Global, Inc., in September 2005. The new subsidiary was represented by Simmons to be a vehicle for servicing staffing needs of the healthcare industry. As of March 29, 2006, Staf*Med has not yet received any income from operations. Plaintiffs are informed and believe and, therefore allege, that the sole or primary purpose, undisclosed to Plaintiffs, was to provide a vehicle whereby substantial funds of the Company would be paid to Simmons' daughter, Kelly Simmons, a/k/a Kelly Gill, as well as a variety of expenses which are clearly personal, not business in nature.

4.     Throughout his tenure while acting as the Company's Director, CEO and President, while under the fiduciary duty and duties of care and loyalty to Plaintiffs described herein, Simmons himself has spent substantial unauthorized Company funds on recreation and other personal matters without business purpose. The Form 8-K filed by St. Joseph, Inc. with the Securities and Exchange Commission on August 24, 2006, states:

> . . .We issued a promissory note to Mr. Simmons on June 16, 2005, in the principal amount of $96,000, accruing interest at an annual rate of ten percent (10%) and payable quarterly. The Note matured on June 16, 206 [sic], and during the six months ended June 30, 2006, we repaid $47,880 of principal and $2,400 of interest. Our Management has taken the position that the remaining balance due Mr. Simmons under this note is fully offset by sums owed to us in connection with excessive and unauthorized expense reimbursements that were paid to Mr. Simmons while he was our President and CEO. *In fact, Mr. Simmons himself provided our auditors with a list of expenses for which Mr. Simmons has admitted he was reimbursed for without proper authorization or such expenses were incurred not for a proper business purpose.* (Italics supplied)

5.     On May 17, 2006, Simmons delivered a note to the Company's Board of Directors stating that he resigned as President and Chief Executive Officer of the Company and its subsidiaries effective that day. Simmons subsequently resigned as a Director of the Company.

6.     Despite repeated demands by the Company's legal counsel since his resignation, Simmons has refused to complete assembly and return of substantial corporate and financial records of the Company.

7.     Simmons has tendered to the Company's Transfer Agent, National Stock Transfer, Inc. of Salt Lake City, Utah, for transfer without restriction, Certificate #1301-250,000 shares; #1444-50,000 shares; #1445-50,000 shares; #1446-50,000 shares; #1447-15,000 shares;

#1448-10,000 shares; #1449-20,000 shares; #1450-20,000 shares; #1451-20,000 shares; #1452-20,000 shares; #1453-20,000 shares; #1454-800,000 shares (1,325,000 shares total).

8.      Proper shareholder authorization was not obtained with respect to any Option Plan pursuant to which Simmons has received stock in the Company. Such authorization is required. Plaintiffs are informed and believe, and therefore allege, that Simmons failed to provide adequate, or any, consideration for certain shares. Simmons lacked the required showing that shareholders had full knowledge of all material facts and thereafter knowingly accepted and approved of such payment or transaction.

9.      The Form 8-K filed by St. Joseph, Inc. with the Securities and Exchange Commission on August 24, 2006, also states:

> At the annual meeting of our Board of Directors on August 24, 2006, our Directors reviewed the options previously granted to the Optionees and after careful and exhaustive deliberation, concluded that the options granted to Mr. Simmons as consideration for providing the same directorial services as the other Optionees was not fair and reasonable to our shareholders. Specifically, our Board of Directors concluded that the amount of options granted to Mr. Simmons, which was 2,000% more than the amount of options granted the other Optionees individually, and 333% more than the amount of options granted to the other Optionees in the aggregate was unduly excessive, unreasonable, and unfair to our shareholders. *Therefore, our Board of Directors resolved to void 1,900,000 options previously granted to Mr. Simmons.* (Italics supplied.)

## FIRST CLAIM FOR RELIEF
(Breach of Fiduciary Duty)

10.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 9 above, as though set forth in full.

11. As the President, Chief Executive Officer and Director of the Company, Simmons owed its shareholders a fiduciary duty of complete care, loyalty and fidelity to shareholder interests. Each Plaintiff is a shareholder of record of the Company.

12. Simmons has acknowledged his fiduciary duty to shareholders in correspondence exchanged with the Company.

13. Simmons was obligated to act solely and exclusively in the best interest of Plaintiffs and other shareholders and was prohibited from acting in a manner contrary to the legitimate business of Plaintiffs and other shareholders.

14. Simmons had duties of care and loyalty to Plaintiffs and a fiduciary duty to them of utmost candor and fidelity to disclose all material facts and circumstances pertinent to the operations and financial performance of the Company and its subsidiaries, Staf*Tek and Staf*Med Global, Inc., including his course of dealing relating to Company shares.

15. By reason of the conduct alleged herein, and in making and participating in misrepresentations and omissions of material fact, Simmons operated a fraud or deceit upon Plaintiffs and other shareholders and breached his fiduciary duty and duties of care and loyalty by obtaining a personal profit or advantage in excess of $75,000 (exclusive of interest and costs), to which Simmons was not legally entitled.

16. As a direct and proximate result of Simmons' breaches of his fiduciary duties and duties of care and loyalty to Plaintiffs and other shareholders, Plaintiffs have suffered and will continue to suffer damages in excess of $75,000 (exclusive of interest and costs).

## SECOND CLAIM FOR RELIEF
### (Fraud)

17. Plaintiffs' reallege and incorporate by reference Paragraphs 1 through 16 above, as though set forth in full.

18. Simmons made and participated in the making of misrepresentations of material fact and omissions to disclose past material facts to shareholders, including Plaintiffs. Such statements and omissions are contained *inter alia* in the Company's Securities and Exchange Commission filings 10QSB and 10KSB during the time from Simmons' assumption of duties of President, Chief Executive Officer and Director of the Company. Such reports were primarily authored by, or reviewed and approved by, Defendant Simmons. In making the representations described above, Simmons omitted material facts necessary to make the statements not misleading, or otherwise failed to disclose all material facts necessary for Plaintiffs to make decisions.

19. Simmons knew that he was making misrepresentations of material fact or omitting to state material facts to Plaintiffs.

20. It was reasonably foreseeable, and Simmons intended, that Plaintiffs would rely upon such information in making decisions.

21. At the time of Simmons' misrepresentations and material omissions, Plaintiffs were ignorant to the falsity of such misrepresentations and material omissions and relied upon those misrepresentations and material omissions to their detriment.

22. As a direct and proximate result of the activities of Simmons described above, Plaintiffs have suffered substantial damages and losses in an amount in excess of $75,000.00 (exclusive of interest and costs).

### THIRD CLAIM FOR RELIEF
### (Negligent Misrepresentation)

23.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 22 above, as though set forth in full.

24.     In the course of his relationship with Plaintiffs, Simmons supplied Plaintiffs with false information.

25.     Simmons was negligent in making misrepresentations of material fact or omitting to state material facts to Plaintiffs.

26.     Simmons intended that Plaintiffs rely upon these misrepresentations or omissions to state material facts.

27.     It was reasonably foreseeable that Plaintiffs would rely upon Simmons' misrepresentations and omissions to state material facts and Plaintiffs, who had no knowledge as to the falsity of the representations or of the omissions to state material facts, relied thereon to their detriment.

28.     As a direct and proximate result of the conduct of Simmons, Plaintiffs have suffered substantial damages and losses in an amount exceeding $75,000.00 (exclusive of interest and costs).

### FOURTH CLAIM FOR RELIEF
### (Non-Disclosure)

29.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 28 above, as though set forth in full.

30.     Simmons concealed past material facts from Plaintiffs concerning his qualifications and integrity, the Company's operations and its compliance with applicable

Colorado law, which facts were material, with the intent of creating a false impression of actual facts and inducing Plaintiffs to take a course of action that they would not have taken if they had known the actual facts.

31.     Plaintiffs took actions and decided not to act relying on the assumption that the concealed facts did not exist or were different from what they actually were.  Such reliance was justifiably based on the concealment of facts by Simmons.

32.     As a direct and proximate result of the activities of Simmons described above, Plaintiffs have suffered substantial damages and losses in an amount exceeding $75,000.00 (exclusive of interest and costs).

**FIFTH CLAIM FOR RELIEF**
**(Concealment)**

33.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 32 above, as though set forth in full.

34.     Simmons concealed past material facts from Plaintiffs concerning his qualifications and integrity, the Company's operations and its compliance with applicable Colorado law, which facts were material, with the intent of creating a false impression of actual facts and inducing Plaintiffs to take a course of action that they would not have taken if they had known the actual facts.

35.     Plaintiffs took actions and decided not to act, relying on the assumption that the concealed facts did not exist or were different from what they actually were.  Such reliance was justifiably based on the concealment of facts by Simmons.

36. As a direct and proximate result of the activities of Simmons described above, Plaintiffs have suffered substantial damages and losses in an amount exceeding $75,000.00 (exclusive of interest and costs).

## SIXTH CLAIM FOR RELIEF
### (False Representation)

37. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 36 above, as though set forth in full.

38. Simmons has made material misrepresentations of facts to Plaintiffs concerning his qualifications and integrity, the Company's operations and its compliance with applicable Colorado law, which facts were material.

39. Simmons made these misrepresentations of material facts to Plaintiffs knowing that they were false and with the intent that Plaintiffs would act or decide not to act in reliance on those misrepresentations.

40. Plaintiffs justifiably relied upon the misrepresentations of material facts made by Simmons.

41. As a direct and proximate result of the activities of Simmons described above, Plaintiffs have suffered substantial damages and losses in an amount exceeding $75,000.00 (exclusive of interest and costs).

## SEVENTH CLAIM FOR RELIEF
### (Promissory Estoppel/Unjust Enrichment)

42. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 41 above, as though set forth in full.

43.     Simmons made representations to Plaintiffs reasonably expecting the Plaintiffs to rely on such promises.

44.     In reasonable reliance upon the statements and representations of Simmons, Plaintiffs continued as shareholders and their existing investments were placed in jeopardy.

45.     It would be unjust for Simmons to retain the benefit derived by the conduct described.

46.     As a direct and proximate result of their reliance upon the statements and representations of Defendant, Plaintiffs have suffered substantial damages and losses in an amount exceeding $75,000.00 (exclusive of interest and costs).

**EIGHTH CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

47.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 46 above, as though set forth in full.

48.     Implicit in Simmons' actions and dealings with shareholders is a covenant of good faith and fair dealing.  The performance and enforcement of such covenant requires honesty and the observance of reasonable standards of fair dealing.

49.     The actions of Simmons, as described herein, constitute a breach, without excuse or justification, of the covenant of good faith and fair dealing.

50.     As a direct and proximate result of the breach by Simmons of the implied covenant of good faith and fair dealing, Plaintiffs have suffered substantial losses and damages in an amount exceeding $75,000.00 (exclusive of interest and costs).

## NINTH CLAIM FOR RELIEF
### (Accounting)

51.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 50 above, as though set forth in full.

52.    Plaintiffs are entitled to an accounting of all values wrongfully received and retained by Simmons through the actions and conduct described herein.

## TENTH CLAIM FOR RELIEF
### (Constructive Trust)

53.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 52 above, as though set forth in full.

54.    Simmons wrongfully acquired assets, funds and value from Plaintiffs.

55.    The imposition of a constructive trust is necessary to prevent the unjust enrichment which would otherwise result from the wrongful acquisition of such assets and funds.

56.    The imposition of a constructive trust is within this Court's equitable powers.

## ELEVENTH CLAIM FOR RELIEF
### (Breach of Contract)

57.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 56 above, as though set forth in full.

58.    Simmons has borrowed money from Plaintiffs David Johnson and Kenneth Johnson, representing that it would be used to acquire shares of the Company or to perform other actions for the benefit of the Company and its shareholders.

59.    David Johnson and Kenneth Johnson have performed all of their obligations under their agreements with Simmons.  Simmons has failed and refused to perform his

obligations, including repayment, and has breached his agreements with David Johnson and Kenneth Johnson.

60.     As a result of the breach of contract by Simmons, Kenneth Johnson and David Johnson have suffered losses and actual damages in an amount to be established at trial. Such damages are in excess of $75,000 (exclusive of interest and costs).

## TWELFTH CLAIM FOR RELIEF
### (Civil Theft Under Colo. Rev. Stat. § 18-4-405)

61.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 60 above, as though set forth in full.

62.     By his actions, Simmons knowingly obtained and retained the value of Plaintiffs' investments through breaches of duties owed to Plaintiffs. Such actions were pursued under false pretenses, constituting civil theft under the provisions of Colo. Rev. Stat. § 18-4-401(1)(a) (knowingly obtaining or exercising control over anything of value of another without authorization, or by threat or deception, with the intent to deprive the other person permanently of the use or benefit of the thing of value).

63.     Pursuant to Colo. Rev. State. §18-4-404, Plaintiffs are entitled to maintain a civil action against Simmons to recover three times the actual damages sustained, as well as costs and attorneys' fees.

## THIRTEENTH CLAIM FOR RELIEF
### (Tortious Interference with Prospective Business Relationships)

64.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 63 above, as though set forth in full.

65.     Simmons has intentionally and improperly interfered with Plaintiffs' prospective contractual and business relationships. The interference consisted of causing third persons not to enter into a prospective relationship with the Company and/or preventing the Company from entering or continuing a prospective relationship.

66.     Plaintiffs have suffered damages caused by Simmons' actions in an excess of $75,000.00 (exclusive of interest and costs).

## FOURTEENTH CLAIM FOR RELIEF
### (Declaratory Relief)

67.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 66 above, as though set forth in full.

68.     Plaintiffs are interested in the Defendant's transactions and documentation involving Company stock described above. Their rights, status and legal relations are affected by those related documents. Plaintiffs are entitled to an adjudication and declaration of their rights pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 to terminate controversy or uncertainty concerning such rights.

69.     Actual controversies exist between Plaintiffs and Simmons concerning their respective rights, status and legal relations pursuant to the Defendant's transactions and documentation involving Company stock described above.

70.    To terminate controversy or uncertainty, Plaintiffs request the declaration of the rights, status and legal relations of the parties and the issuance of declaratory orders that:

    (a)    Simmons has no right, title, interest or claim with respect to the Company's restricted stock issued to him or stock issued for which no or inadequate consideration was provided.

    (b)    Simmons must promptly disgorge all illegally obtained stock.

    (c)    Simmons must promptly notify the Transfer Agent that his request for transfer is withdrawn or held in abeyance pending the ruling of this Court.

71.    The pecuniary effect of an adverse determination to Plaintiffs' request for declaratory relief exceeds $75,000.00 (exclusive of interest and costs).

### PRAYER FOR RELIEF

Plaintiffs pray for this Court to enter an Order:

1.    Entering judgment in favor of Plaintiffs and against Defendant as follows:

    (a)    For a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed R. Civ. P. 57 declaring that Simmons has no legal right, title, interest or claim with respect to certain shares of stock of the Company issued pursuant to options or otherwise; and that the actions of Simmons were vexatious and without justification, entitling Plaintiffs to recover their reasonable attorneys' fees.

    (b)    For an award of damages against Defendant on each claim asserting monetary damages in an amount to be ascertained at trial, but not less than

$75,000.00 (exclusive of interest and costs), which the evidence at trial may demonstrate was caused by Simmons' conduct.

(c)     For an award of Plaintiffs' pre and post litigation attorneys' fees and costs of litigation (including, without limitation, all expenses and fees for expert witnesses used in preparation for or at trial), pre-judgment and post-judgment interest and such other and further relief as the Court may deem just and proper.

(d)     For an award of treble damages and attorneys' fees pursuant to C.R.S. § 18-4-405.

DATED this 17th day of October, 2006.

Respectfully submitted,

_s/ Jeffrey C. Pond_
Jeffrey C. Pond
John E. Matter
Burke N. Riggs
Moye White LLP
16 Market Square, 6th Floor
1400 16th Street
Denver Colorado 80202-1473
Telephone:  303 292 2900

ATTORNEYS FOR PLAINTIFFS VIRGINIA
BERGER, DIANE BORRAEGO, MIKE
CORNELL, TOM GUDAHL, SCOTT IRWIN,
KENNETH JOHNSON, DAVID JOHNSON,
DEBORAH KASZYCKI, RYAN KASZYCKI,
RON MESERY AND DAWN STROWP,
INDIVIDUALS

Plaintiffs' Addresses:

Virginia Berger
417 E. 23rd
Cheyenne, WY  82001

Diane Borraego
2586 Lawrence Street
Denver, CO  80205

Mike Cornell
811 University Ave.
Hastings, NE  68901

Tom Gudahl
4518 Ontario Avenue
Cheyenne, WY  82001

Scott Irwin
3761 Cribbon
Cheyenne, WY  82001

Dawn Strowp
4518 Ontario
Cheyenne, WY  82001

Kenneth Johnson
4335 S. Street
Lincoln, NE 68506

David Johnson
906 E. 7th Street
Hastings, NE  66901

Deborah Kaszycki
11493 E. Yale Place
Aurora, CO  80014

Ryan Kaszycki
6950 E. 1st Place
Denver, CO  80220

Ron Mesery
3326 Alexander
Cheyenne, WY  82001

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2006, I electronically filed the foregoing SECOND AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addressees:

Frank W. Visciano
Senn Visciano Kirchenbaum Merrick PC
1801 California Street
Suite 4300
Denver, CO 80202-2604

*Liz Gaskins*_____

# EXHIBIT A

**RODRIGUEZ & ASSOCIATES**
*Raúl N. Rodriguez, Esq.*
*555 E. 10th Avenue, #105*
*Denver, Colorado 80203*

*Telephone: (303) 861-1797*

*Facsimile: (303) 861-1995*
*E-mail Address:raulnr@msn.com*

August 2, 2004

John H. Simmons
St. Joseph, Inc./Staf*Tek
4800 S. Lewis, Suite 105
Tulsa, OK 74105

Re:     Clarification of Responsibilities

Mr. John Simmons:

I have read your letter dated July 25, 2004, and I assume you are writing it to me. It is important for me to know that after many months you now understand that the duties that you point out should be taken seriously. I must have failed in pointing out these duties to you even though I have made many efforts. And yes, I further agree that you have fiduciary duties, and I assume and have assumed that you are carrying them out in a commercial business like and judicious manner.

Now, with respect to the misspelling of your name, for that we are sorry. But, as you may take note, any and all documents, that are anticipated to be filed with the SEC or any governmental agency, are first sent to you for proofing, review and comments. That process is followed until everyone agrees with the text of the document that is ultimately filed with the proper designated governmental authority. Thus, if your name was misspelled, you and others that reviewed the document likewise missed the spelling.

In the course of our relationship with the Company, I have orally and in writing implored you and your staff to provide me with information in a timely manner. That timeliness has not happened leading me to conclude that your interest lies in other places and that providing me the necessary information is not important or a high priority. I have reminded you that timely filing with the SEC is crucial and that there is not any room for error or delay. In a current example, I have requested information from you since July 1, 2004 in order to prepare the Form 10-QSB for the quarter ending June 30, 2004. The Form 10-QSB has to be filed with the SEC within 45 days of its due date. As of today, I have not received the financials or any information regarding the Company since the last SEC filing.

With respect to the Forms 3, 4 and 5, it was your responsibility to provide me with the information in a timely manner, so we could file them through EDGAR. The information for the Forms came in fragmented form so they took longer to file. Keep in mind that as a good corporate steward, you did not want to pay legal fees for the preparation of these forms, so it was left up to your shareholders and your staff to provide the information.

You point out that "there has continued to be mistake after mistake, both in the formation of these documents...." I guess I am surprised that if such is the case, you have not brought them to my attention. I am sure you know the SEC would comment on any documents filed through EDGAR if the documents were filed incorrectly or they contained egregious mistakes. As counsel, I have not received any feedback from the SEC, but if you have, I would appreciate receiving the SEC's comments.

As it relates to the Schedule 13-Ds, information is still coming in, so these Schedules have not been filed. I still need that information so they can be filed.

Johnny, I to, have e-mails and correspondence showing that I have requested information that I did not receive in a timely manner. I also have copies of the forms that have been sent to you for comments and revisions before they were ultimately filed with the SEC.

Yes, I understand the standards that a CEO has to adhere to, but I cannot perform my job unless you perform yours. And, since my integrity is at issue when a CEO is not responsive to requests for information, it is difficult to properly represent the Company.

Keep in mind that, I have provided you considerable information to assist you with your annual meeting and, I did not bill you for that additional work. Sometimes an attorney does that.

Pursuant to our Agreement, I will prepare another draft of the Form 10-SB, at no extra charge beyond what you have paid. Since you and I have questioned one another's professionalism, it will be difficult for me to continue as special counsel for the Company, and, therefore I hereby resign as of today.

If you should have any questions, please give me a ring.

Very best regards,

Raúl N. Rodriguez, Esq.

# EXHIBIT B

accrued interest on the note. Interest expense on the note totaled $9,400 for the year ended December 31, 2005.

During the year ended December 31, 2005, on several occasions Phyllis Bell advanced the Company amounts totaling $255,000 for working capital in exchange for promissory notes. The Company repaid the notes and $1,918 of related interest expense prior to December 31, 2005.


<PAGE>


Other than disclosed above, none of the Directors or Officers of the Company, nor any proposed nominee for election as a Director of the Company, nor any person who beneficially owns, directly or indirectly, shares carrying more than 10% of the voting rights attached to all outstanding shares of the Company, nor any promoter of the Company, nor any relative or spouse of any of the foregoing persons has any material interest, direct or indirect, in any transaction since the date of the Company's incorporation or in any presently proposed transaction which, in either case, has or will materially affect the Company. The Company has not entered into transactions with any member of the immediate families of the foregoing persons, nor is any such transaction proposed.

Item 13. EXHIBITS AND REPORTS ON FROM 8-K

| EXHIBIT NO. | DESCRIPTION OF DOCUMENT |
| --- | --- |
| 2.1 | Agreement of Share Exchange and Purchase and Sale * |
| 3(i) | Articles of Incorporation of Pottery Connection, Inc. * |
| 3(ii) | Amended Articles of Incorporation (Name change to St. Joseph Energy, Inc.) * |
| 3(iii) | Bylaws of Pottery Connection, Inc. * 3(iv) Amended Articles of Incorporation (Name change to St. Joseph, Inc.) * |
| 4.0 | Specimen form of Registrant's common stock * |
| 10.1 | Exclusive Agreement between David Johnson-St. Joseph Energy, Inc. * |
| 10.2 | St. Joseph Energy, Inc. User Agreement * |
| 21.1 | Subsidiaries of St. Joseph, Inc. |
| 31.1 | Principal Executive Officer Certification under Section 302 of the Sarbanes-Oxley Act of 2002 |
| 31.2 | Principal Financial Officer Certification under Section 302 of the Sarbanes-Oxley Act of 2002 |
| 32.1 | Principal Executive Officer Certification under Section 906 of the Sarbanes-Oxley Act of 2002 |
| 32.2 | Principal Financial Officer Certification under Section 906 of the Sarbanes-Oxley Act of 2002 |

* Incorporated by reference to a previously filed exhibit or report.


ITEM 14. PRINCIPAL ACCOUNTANT FEES AND SERVICES

Audit Fees: The Company's auditor is Cordovano and Honeck, LLP, located at 88 Inverness Circle East, Building M, Englewood, Colorado 80112 and the Company paid them $ 12,172.50 in audit and review fees for the fiscal year ended December 31, 2005.

The Company paid $8,840 in audit and review fees for 2004.

Tax Fees: The Company did not pay its auditor any fees related to tax compliance, tax advice, and tax planning for the fiscal years ended December 31, 2005 and 2004.